MATTER OF MEGALOGENIS

In VISA PETITION Proceedings

A-15152972

*Decided by Board June 26, 1964*

Since consummation by cohabitation is not required in a common-law marriage
contracted "per verba de praesenti" in the State of Pennsylvania, the marriage
contracted between petitioner, a U.S. citizen, and beneficiary, a citizen of
Greece, aboard ship at Marcus Hook, Pa., in the presence of each other before
witnesses, though not consummated by cohabitation, is a valid marriage and
serves to confer nonquota status.

The District Director at Philadelphia has denied nonquota classifi-
cation for the petitioner's alleged alien husband on the ground that no
valid common-law marriage exists between the petitioner and the
beneficiary. The petitioner appeals from this decision.

The petitioner is a native of Puerto Rico, a citizen of the United
States. She resides in the State of Pennsylvania. She testified that
she married the beneficiary, a citizen of Greece, aboard ship at Marcus
Hook, Pennsylvania on January 16, 1964 (pp. 3–7). She described
the marriage ceremony as follows: ". . . we had some papers like a
marriage license [1] and we stand and say the same thing that you would
say in church and we sign the papers, the Captain, the Chief Officer,
my husband, the lawyer and my aunt. And also I did too" (p. 7).

The petitioner identified the contract of marriage submitted with the
petition as the one both she and her husband signed in the presence of
each other. She testified that the marriage had not been consummated
because the Immigration Service would not grant shore leave to the
beneficiary (pp. 6 and 7). When questioned as to whether she married
the beneficiary solely for the purpose of giving him nonquota immigra-
tion status she replied "I married him because I love him" (p. 8).

The District Director at Philadelphia is of the opinion that the
petitioner did not contract a legal marriage "within the meaning of the
immigration laws" because "The circumstances surrounding the pro-

---

[1] The petitioner refers to the marriage contract which is set forth as Appen-
dix A.

609

cedure followed are not in keeping with the accepted concept of common-law marriage, and indicates that marriage was attempted solely to obtain nonquota status for the beneficiary." The Service argues that no valid common-law marriage exists between the petitioner and the beneficiary because it has not been consummated.

There is no separate federal law or policy governing marriages. As between the federal and state governments the power to control and regulate marriage is retained by the latter and is not vested in Congress except in the District of Columbia and the territories of the United States. *O'Connor* v. *Johnson*, 74 F. Supp. 370, 375, U.S.D.C., W.D.N.Y., 1947. The Pennsylvania rule concerning marriage has been stated by the Pennsylvania Supreme Court as follows: "Marriage is a civil contract jure gentium, to the validity of which the consent of parties, able to contract, is all that is required by natural or public law. If the contract is made per verba de praesenti, though it is not consummated by cohabitation, or if it be made per verba de futuro, and be followed by consummation, it amounts to a valid marriage in the absence of all civil regulations to the contrary . . . marriage is in law a civil contract, not requiring any particular form of solemnization before officials of church or state." *Richard* v. *Brehm*, 73 Pennsylvania 140, 144 (1873).

It is settled law in the State of Pennsylvania that a common-law marriage is valid. Marriage Act of 1953, P.L. 1344, Section 23; *Ex parte Suzana*, 295 F. 713, 717 District Court, Mass., 1924. It is also settled law in the State of Pennsylvania that cohabitation and reputation that the parties are married, standing alone, does not constitute a legal marriage, not even a common-law marriage. Cohabitation and reputation are merely evidence which give rise to a rebuttable presumption of marriage. *In re Manfried's Estate*, 159 A. 2d 697, Supreme Court of Pennsylvania 1960; *Caddy* v. *Johnstown*, 196 A. 590, 129 Pa., Super., 493.

One of the issues before the Quarter Sessions Court of Cambria County, Pennsylvania in the case of *Commonwealth* v. *Amann*, 58 Pa. District and County Reports 669 (1947) was whether a valid common-law marriage had been contracted even though it was not consummated by subsequent cohabitation. The defendant, Amann was abroad in the Military Service of the United States. Upon learning that a child had been born out of wedlock to his fiancee, a resident of Pennsylvania, he arranged a contract of marriage similar to the one executed in the case before us. The formal contract was duly executed by both parties and each party received a copy. Amann returned to the United States and refused to support his wife and child. The wife brought an action against him under Pennsylvania Public Law 872,

Section 733 (18 Purdon's Pennsylvania Statutes 4733), charging failure to support.

Amann defended on the ground that the prosecutrix was not his lawful wife. He contended that the marriage contract did not create a valid common-law marriage because (1) the contract was not executed in the presence of each other; (2) that since the defendant (Amann) agreed to the marriage in the Philippine Islands and the prosecutrix agreed some weeks later in the State of Pennsylvania the agreement was per verba de futuro which will not support a common-law marriage; and (3) there was no consummation of the marriage following the execution of the marriage agreement.

The court citing the rule established by the Pennsylvania Supreme Court in the case of *Richard* v. *Brehm* and other cases[2] held that a marriage with mutual consent executed by correspondence is valid in the State of Pennsylvania; that the contract was a continuing offer subject to acceptance by the intended wife and therefore constituted a binding contract of marriage in the State of Pennsylvania and that since a valid marriage had been entered into under the law of the State of Pennsylvania "a consummation by cohabitation is not required." The court said "The fact is that cohabitation is frequently used to prove marriage, but its absence does not disprove marriage otherwise shown to have been effected." *Commonwealth* v. *Amann*, supra at Page 673.

The facts of the case before us establish that there was a valid contract of marriage "per verba de praesenti" executed in the presence of each other by the petitioner and the beneficiary. The Supreme Court of Pennsylvania has said that consummation by cohabitation is not required in a common-law marriage if the marriage contract is made "per verba de praesenti." Since the law of the State of Pennsylvania Controls in this matter we have no alternative but to rule that the petitioner is the lawful wife of the beneficiary. The beneficiary therefore qualifies for nonquota status as the spouse of a United States citizen. An appropriate order will be entered.

**ORDER:** It is directed that the appeal be and the same is hereby sustained. The petition on behalf of Ioakim Megalogenis is hereby granted.

### APPENDIX A

#### CONTRACT OF MARRIAGE

THIS AGREEMENT, made this 16th day of January A.D. 1964, in the Borough of Marcus Hook, County of Delaware, State of Pennsylvania, by and between IOAKIM MEGALOGENIS and OFELIA BERMUDEZ

---

[2] *Ex parte Suzana*, 295 F. 713; *Great Northern Railway Company* v. *Johnson*, 254 F. 683.

### WITNESSETH:

WHEREAS, the Parties hereto are desirous of entering into a present Agreement of Marriage, and mutually consenting each with the other to become man and wife;

NOW THEREFORE, each does covenant and agree as follows:

1. I, IOAKIM MEGALOGENIS, do hereby solemnly agree to take OFELIA BERMUDEZ as my lawful wedded wife, to live together with her in the holy state of matrimony, and to love, cherish, comfort, honor and keep her, for richer or poorer, for better or worse, in sickness and in health, and, forsaking all others, until death parts us.

2. I, OFELIA BERMUDEZ, do hereby solemnly agree to take IOAKIM MEGALOGENIS as my lawful wedded husband, to live together with him in the holy state of matrimony, and to love, cherish, comfort, honor and keep him, for richer or poorer, for better or worse, in sickness and in health, and, forsaking all others, until death parts us.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals this 16th day of January A.D. 1964.

--------------------------------------- (SEAL)

IOAKIM MEGALOGENIS

--------------------------------------- (SEAL)

OFELIA BERMUDEZ

Witnessed:

Marie A. Gonzalez,
Chief Officer,
Captain,
Filindo B. Masino, Esq.